United States District Court
Southern District of Texas
**ENTERED**
September 16, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| Mohammad Aref Moradi, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil No. 4:26-cv-2578 |
| | § | |
| Martin Frink, *et al.*, | § | |
| | § | |
| Respondents. | § | |

**ORDER DISMISSING HABEAS PETITION**

Before the Court is Petitioner's Petition for Writ of *Habeas Corpus*, Doc. 1, and Respondents' Motion for Summary Judgment. Doc. 8. For the reasons set forth below, the Motion is GRANTED. The Petition is DISMISSED WITHOUT PREJUDICE as to refiling a due process challenge to prolonged future detention and DISMISSED WITH PREJUDICE in all other respects.

## I. FACTUAL AND PROCEDURAL HISTORY

On December 22, 2024, Petitioner Mohammad Aref Moradi, a native and citizen of Afghanistan, illegally entered the United States. Docs. 1 at 9; 8-1 ¶ 6. Immediately after Petitioner's illegal entry, he was apprehended and placed in immigration custody. Doc. 1 at 9. On August 29, 2025, an immigration judge denied Petitioner's asylum application and ordered him removed to his native country of Afghanistan. Doc. 8-3 at 3. Petitioner did not appeal, and, on September 29, 2025, his removal became administratively final. *See* Doc. 1 at 9.

Once Petitioner's order of removal became administratively final, the Department of Homeland Security ("DHS") initiated his removal to Afghanistan. Doc. 17-1 ¶ 6. However, pertinent to aliens like Petitioner, Afghanistan has suspended repatriation of its own citizens. *Id.* Consequently, DHS contacted other countries ("third countries") as potential destinations for Petitioner's removal. *Id.*

On February 13, 2026, while in custody, Petitioner informed DHS, apparently for the first time, that he possesses a valid Greek passport, and requested removal to either Greece or South America. Doc. 8-1 ¶ 18. To effectuate Petitioner's request, DHS initiated removal discussions with Greece, which remain ongoing. Docs. 8-1 ¶ 18; 17-1 ¶ 6. In July, DHS sent additional third-country removal requests to the embassies of eleven countries: Australia, the Netherlands, Belgium, Argentina, Brazil, Uganda, Canada, the United Arab Emirates, Qatar, Turkey, and Indonesia. Doc. 17-1 ¶ 6. Argentina, Indonesia, and the Netherlands rejected those requests, but the Canadian and Ugandan embassies internally forwarded DHS's request for further action. *Id.* As of August 5, 2026, DHS is awaiting a response from these embassies. *Id.*

Pursuant to 8 U.S.C. § 1231(a), Petitioner remains in the custody of Respondent, Warden of the Houston Contract Detention Facility, in Houston, Texas. Doc. 1 at 1. Petitioner filed a petition for a writ of *habeas corpus* under 28 U.S.C. § 2241 on the grounds that his present detention violates due process under *Zadvydas v. Davis*, 533 U.S. 678

(2001).[1] *Id.* at 5–6. Respondents contend that Petitioner's detention remains lawful because he is significantly likely to be removed to a third country in the reasonably foreseeable future. Doc. 8 at 5.

## II. LEGAL STANDARD

Under *Zadvydas v. Davis*, an alien carries the initial burden to provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. Only after the alien carries this burden must the Government respond "with evidence sufficient to rebut that showing." *Id.* And because *Zadvydas* is best construed to restrict detention that "d[oes] not serve its purported immigration purpose"—that is, situations where removal is "no longer practically attainable"—this Court has adopted specific guidelines to govern this burden-shifting framework. *See Avadanei v. Frink*, 4:26-cv-2177 (S.D. Tex. July 31, 2026) (quoting *Demore v. Hyung Joon Kim*, 538 U.S. 510, 527 (2003)).

To satisfy his initial burden, an alien "must demonstrate that the circumstances of *his* status or the existence of particular *individual* barriers . . . are such that there is no significant likelihood of removal in the reasonably foreseeable future." *Idowu v. Ridge*, No. 3:03-cv-1293, 2003 WL 21805198, at *4 (N.D. Tex. Aug. 4, 2003) (Ramirez, Mag. J.) (internal quotes omitted) (emphases added). Speculation, conjecture, or "lack of visible

[1] Petitioner does not specify whether his detention without a bond hearing violates substantive or procedural due process. *See* Doc. 1 at 5–6. The Court assumes that Petitioner intends to raise both due process challenges.

progress" are not enough. *Id.* Rather, an alien must make a non-conclusory showing that "ICE is incapable of executing his removal" in the "near future." *Nagib v. Gonzales*, No. 3:06-cv-294, 2006 WL 1499682, at *3 (N.D. Tex. May 31, 2006) (Sanderson, Mag. J.).

Once the burden has shifted, the Government cannot succeed merely by showing that it has made "good faith efforts" and that removal is not utterly "impossible." *Surovtsev v. Noem*, No. 1:25-cv-160, 2025 WL 3264479, at *7 (N.D. Tex. Oct. 31, 2025) (Hendrix, J.) (quoting *Zadvydas*, 533 U.S. at 702). But DHS also need not immediately produce detailed plans for effectuating the alien's removal to a third country. Rather, if DHS identifies third country removal as a viable alternative, "[t]he Court is obligated to 'giv[e] due weight to the likelihood of successful future negotiations" with those countries. *Id.* (quoting *Zadvydas*, 533 U.S. at 702).

## III. ANALYSIS

Petitioner's current detention does not violate the Fifth Amendment's Due Process Clause or the Immigration and Naturalization Act. Petitioner has failed to carry his initial burden under *Zadvydas* to provide good reason to believe that he is not significantly likely to be removed in the reasonably foreseeable future. 533 U.S. at 701. Moreover, Respondents have offered sufficient summary judgment evidence that Petitioner's removal is likely to occur in the near future. Doc. 17-1 ¶¶ 6, 7. Thus, this Court finds sufficient grounds to deny the Petition.

The sole reason Petitioner provides for his *Zadvydas* release in the Petition itself is the conclusory statement that "removal to any country in the foreseeable future is not

reasonable." Doc. 1 at 9. In Petitioner's Reply to Respondents' Motion for Summary Judgment, Petitioner elaborates slightly, saying that "Petitioner's detention is unlawful because the Respondent did not provide any evidence. . . that [P]etitioner's removal will occur in [the] near future." Doc. 12 at 2. Petitioner then contends that he is not significantly likely be removed in the near future because (1) Afghanistan has failed to issue a transportation letter, (2) neither Afghanistan nor a third country has agreed to accept his removal yet, (3) Petitioner does not yet have a travel visa, and (4) DHS has not arranged Petitioner's removal flight. Doc. 12 at 2.

None of these allegations satisfy the *Zadvydas* burden. First, the Petition's conclusory allegations are insufficient to fulfill an alien's burden. *Nagib*, No. 3:06-cv-294, 2006 WL 1499682, at *3. Second, Petitioner's claim that his detention is unlawful on the theory that Respondents "did not provide evidence" that he will be removed soon is a misunderstanding of the relevant law. Petitioner shoulders the initial burden of proof, not Respondents. *Zadvydas*, 533 U.S. at 701.

Third, the fact that an alien has not yet been removed after the expiration of six months' custody does not necessarily mean that there exists "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Rather, six months of post-removal order detention instead triggers a *presumption* of unreasonableness, and like with all rebuttable presumptions, a court must carefully evaluate available countervailing evidence before reaching a conclusion. *Id.* at 701–702. Here, the Court, in assessing the reasonableness of extended

detention and the likelihood of removal in the future, should—and does—take into account differing conditions amongst destination countries. It is obviously easier to facilitate an alien's removal when the United States enjoys regular and cordial diplomatic relations with the alien's home country. By contrast, when an alien hails from a country with which diplomatic relations are strained—such as Iran, Cuba, or here, Afghanistan—DHS is more likely to encounter resistance to, if not full-scale embargos of, its repatriation efforts. The present administration has displayed both interest and vigor in utilizing third country destinations to accept aliens who either refuse to be repatriated to their home country or whose home country will not accept them. Such a process is understandably more convoluted and time-consuming than a garden variety removal. As this case demonstrates, the process often requires inquiries to multiple nations over a period of months, all coordinated through the Department of State.

Thus, this Court, in assessing the likelihood of an alien's removal in the reasonably foreseeable future, must, of necessity, also take into consideration the fact that third country removal requires significantly more time and effort than a typical removal. In other words, while a six-month delay in removal to, say, Canada or Mexico may suggest that removal is not reasonably likely in the near term, such a period is not equally suggestive in more complex cases, such as removal to a third country.

This Court also must consider the fact that Petitioner is apparently himself responsible for a significant portion of the delay in removal. Despite being taken into custody in December of 2024, Doc. 1 at 9; Doc. 8-1 ¶¶ 6-8, Petitioner only informed

authorities that he possessed a valid Greek passport in February of 2026, after which he requested removal to Greece or South America.[2] Doc. 8-1 ¶ 18. There is no explanation in the record as to why this information was not conveyed to the authorities at the outset of Petitioner's detention. Had this occurred, DHS could have focused their negotiations with Greece six months earlier. Other courts have held that when a petitioner is responsible for delaying his own removal, it is permissible to discount such time from the reasonableness analysis under *Zadvydas*. *Fuentes-De Canjura v. McAleenan*, No. EP-19-cv-00149, 2019 WL 4739411, at *7 (W.D. Tex. Sept. 26, 2019) (holding that petitioner "offered no other reason [for] the delay in her removal besides her own attempts to seek relief from removal" and thus had no "viable constitutional claim"); *Okechukwu Mummee Amadi v. Young*, No. 2:06-cv-1138, 2007 WL 855358, at *4 (W.D. La. Feb. 12, 2007) (holding "an alien cannot assert a viable constitutional challenge to his indefinite detention when such detention is due to [his] own actions"); *see* also *Pelich v. Immigration and Naturalization Service*, 329 F.3d 1057, 1060 (9th Cir. 2003) (collecting cases denying habeas relief to aliens challenging their alleged indefinite detentions that were caused by their own actions and holding that "the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock"). This Court now joins these courts in holding the same.

---

[2] The Greek passport, which Petitioner attached as an exhibit to his Reply to the United States' Motion for Summary Judgment, states that it is valid for all countries except Afghanistan and describes Petitioner an Afghan national who is a "beneficiary of internat[ional] protection" and "refugee." *See* Doc. 12-1.

Lastly, in reviewing DHS's record of removals of Afghan citizens to third countries, this Court "has no reason to believe that [such removal] efforts will be unsuccessful." *Avadanei v. Frink*, 4:26-cv-2177, slip op. at 8 (quoting *Misirbekov v. Venegas*, 796 F. Supp. 3d 436, 439 (S.D. Tex. 2025)). In Fiscal Year 2025, DHS deported 554 Afghan citizens to third countries and an additional 273 have been removed through April in Fiscal Year 2026. Docs. 8-1 ¶¶ 22–24; 17-1 ¶ 7. Here, DHS is presently negotiating with nine such countries to facilitate Petitioner's removal.

Petitioner has failed to specify why "*his* status" or "*individual* barriers" render removal to these countries unlikely. *See Idowu*, 2003 WL 21805198, at *4 (internal quotes omitted) (emphases added). Because Petitioner has not shown that "ICE is incapable of executing his removal" in the "near future," he has failed to carry his initial burden under *Zadvydas*. *See Nagib*, 2006 WL 1499682, at *3.

However, even if Petitioner had satisfied his initial burden, the Government has offered sufficient evidence to rebut any question regarding the imminence of his removal. *See Zadvydas*, 533 U.S. at 701. Respondents are actively engaged in negotiations with Canada and Uganda and are awaiting responses from another seven nations' embassies. Doc. 17-1 ¶ 6. Because DHS has identified third country removal to these countries as a viable alternative, "[t]he Court is obligated to 'giv[e] due weight to the likelihood of successful future negotiations.'" *Surovtsev*, 2025 WL 3264479, at *7 (quoting *Zadvydas*, 533 U.S. at 702). The Court will therefore allow DHS additional time to expeditiously finalize an agreement to remove Petitioner to one of those or the many other countries that

the agency has contacted. Respondents, however, are cautioned that such additional time is not unlimited in duration, and that they should proceed with urgency.

In sum, Petitioner has failed to offer good reason to believe that his removal is not significantly likely to occur in the reasonably foreseeable future. However, even if he had, the Government has adduced evidence suggesting that his removal to a third country is, in fact, imminent. Therefore, Petitioner's detention remains consistent with 8 U.S.C. § 1231(a)(6) and has not yet arisen to the level of a due process violation under *Zadvydas*.

## IV. CONCLUSION

For the foregoing reasons, DHS has acted within its discretion under 8 U.S.C. § 1231(a)(6) by continuing to detain Petitioner. His detention violates neither the Immigration and Naturalization Act nor due process. Therefore, Respondents' Motion for Summary Judgment is GRANTED. The Petition is DISMISSED WITHOUT PREJUDICE as to raising a due process challenge if detention unreasonably continues and DISMISSED WITH PREJUDICE in all other respects. The Clerk of Court is directed to CLOSE this case. A final judgment will be entered separately.

**SO ORDERED.**

**SIGNED** at Houston, Texas, on the 16th of September, 2026.

Nicholas J. Ganjei
United States District Judge